IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Chyna J. Mitchell,<br>      Plaintiff,<br>    v.<br>Columbus Urban League, *et al.*,<br>      Defendants. | Case No: 2:18-cv-747<br>Judge Graham<br>Magistrate Judge Jolson |
| Joselyn Parker,<br>      Plaintiff,<br>    v.<br>Columbus Urban League, *et al.*,<br>      Defendants. | Case No: 2:18-cv-748<br>Judge Graham<br>Magistrate Judge Jolson |

Opinion and Order

Before the court are related cases for workplace discrimination and retaliation brought under Title VII of the Civil Rights Act and under state law. Plaintiffs Chyna Mitchell and Joselyn Parker filed separate suits alleging that they were involved in a same-sex romantic relationship while employed by defendant Columbus Urban League. Plaintiffs allege that they conducted themselves in full compliance with the Urban League's Relationships in the Workplace Policy but that their employment was wrongfully terminated because of their sexual orientation.

This matter is before the court on the motion filed by plaintiffs to disqualify attorney Christina Corl as counsel for defendants. Plaintiffs move to disqualify defense counsel on the grounds that Ms. Corl was a witness to certain events at issue and will likely be called at trial to testify.

For the reasons stated below, the motion to disqualify is denied.

I.

Plaintiff Mitchell worked at the Urban League as an Associate Vice President. Plaintiff Parker worked there as the Director of Education and Youth Services. They began a romantic relationship in March 2017 and disclosed their relationship to Human Resources Director Cherese Boyd on May 1, 2017.

According to plaintiffs, Boyd told them that their relationship was not in violation of the Relationships in the Workplace Policy. Boyd advised them that if they still had any concerns, they

could talk to defendant Stephanie Hightower, the President and Chief Executive Officer of the Urban League. They did so on the same day and Hightower stated no objection to their relationship as long as it did not interfere with their work.

A few days later, Hightower spoke with the Urban League's legal counsel, Christina Corl. This conversation allegedly caused Hightower to have concerns about the propriety of the relationship between Mitchell and Parker. Hightower directed plaintiffs to meet with Corl.

Corl met with plaintiffs on May 9, 2017. Corl allegedly told them that they were "not in any trouble" and that employees were allowed to be in a dating relationship so long as they avoided conflicts of interest and the appearance of impropriety.

Mitchell alleges that Corl was a witness to two additional events during Mitchell's employment. The first concerned a suspension. On May 23, 2017, Mitchell was suspended for three days, for what she alleges were improper reasons. Mitchell appealed the suspension and Corl informed Mitchell of the outcome on appeal, sustaining the suspension. Secondly, on August 18, 2017 Corl informed Mitchell that the Urban League had terminated her employment and informed her that the reason given by defendant for her termination was performance-related.

Parker alleges that Corl informed her on May 23, 2017 that defendant had terminated her employment.

## II.

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." Kitchen v. Aristech Chem., 769 F.Supp. 254, 256 (S.D. Ohio 1991). The power to disqualify an attorney from a case "is incidental to all courts, and a district court is obliged to consider unethical conduct by any attorney in connection with any proceeding before it." SST Castings, Inc. v. Amana Appliances, Inc., 250 F.Supp.2d 863, 865 (S.D. Ohio 2002). Even so, courts should treat motions to disqualify counsel "with extreme caution" because denying an opponent the services of counsel is a powerful weapon that can be misused. Id. at 865-66 (citing Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982)); see also Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988).

"The party seeking disqualification of counsel must identify articulable facts demonstrating a conflict or any legitimate basis for disqualification." Prado v. Mazeika, No. 3:16-CV-320, 2016 WL 6947943, at *1 (S.D. Ohio Nov. 28, 2016). In considering a motion to disqualify counsel, a court must use its discretion in balancing the "competing public interests of requiring professional conduct by an

2

attorney and of permitting a party to retain counsel of his choice." Kitchen, 769 F.Supp. at 257. "The extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." SST Castings, 250 F.Supp.2d at 865 (quoting Kitchen, 769 F.Supp. at 257).

III.

The Court's local rules incorporate the ethical standards of the Ohio Rules of Professional Conduct. See S.D. Ohio Local Civ. R. 83.3(h); Model Fed. R. of Disciplinary Enforcement IV(B). At issue in this case is the "Lawyer as Witness" rule:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case;
>> (3) the disqualification of the lawyer would work substantial hardship on the client.

Ohio R. Prof. Conduct 3.7(a). This rule serves to protect the trier of fact from being "confused or misled by a lawyer serving as both advocate and witness." Id., Cmt. 2. In such situations, "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Id.

To prevail on a motion to disqualify under Rule 3.7(a), the movant must demonstrate "the necessity of the testimony" and show "a substantial likelihood of prejudice" if the advocate-witness were to be allowed to serve as counsel at trial. United States v. Poulsen, No. 2:06-cr-129, 2006 WL 2619852, at *8 (S.D. Ohio Sept. 12, 2006) (emphasis omitted). "'Necessity' is determined by consideration of factors such as the significance of the matters, the weight of the testimony, and the availability of other evidence." Id. (internal quotation marks omitted). "'Prejudice,' on the other hand, requires that the testimony be sufficiently adverse to the factual assertions or accounts of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Id. (internal quotation marks omitted).

IV.

Plaintiffs argue that attorney Corl is a witness with knowledge of several events at issue in this case. In particular, plaintiffs assert that Corl will likely be called to testify about: the May 9 meeting

between Corl and plaintiffs, Mitchell's three-day suspension and the denial of Mitchell's appeal of the suspension, and Corl's notifications to plaintiffs that the Urban League had terminated their employment.

The court finds that plaintiffs have not satisfied their burden of demonstrating a legitimate basis for disqualification under Rule 3.7. With respect to Mitchell's suspension and the terminations, the court finds that Corl's testimony on these matters is unnecessary. Defendants admit in their answers to the complaints that they suspended Mitchell, denied her appeal and terminated the employment of both plaintiffs. See Doc. 11 in Case. No. 2:18-cv-747 at ¶¶ 61, 81, 95; Doc. 14 in Case No. 2:18-cv-748 at ¶ 88. Thus, the fact of the decisions themselves is not controverted. Evidence concerning how the decisions were communicated to plaintiffs and concerning defendants' disciplinary policies and procedures can be elicited through means other than Corl's testimony. Plaintiffs can establish those facts through, for instance, the testimony of Human Resources Director Boyd.

To the extent plaintiffs seek testimony from Corl about the "details underlying the grounds" for the suspension and termination decisions (see Doc. 7 in Case No. 2:18-cv-747 at p. 11), Corl's communications with defendants are protected by attorney-client privilege. Moreover, Corl has submitted an affidavit stating that she was not a decisionmaker and has no personal knowledge regarding the basis for the employment actions taken against plaintiffs. Corl Aff. at ¶¶ 2, 3. Corl states that she merely communicated the Urban League's personnel decisions to plaintiffs. Id. at ¶ 5. The court further finds that plaintiffs will have ample opportunity to discover the reasons for these decisions by engaging in written discovery and examining Boyd, Hightower and other employees of the Urban League.

With respect to the May 9 meeting, plaintiffs allege that they met alone with Corl, who told them that they were "not in any trouble," that their dating relationship was "fine" and that dating relationships had occurred within the Urban League employment setting before. See Doc. 1 in Case. No. 2:18-cv-747 at ¶ 50; Doc. 1 in Case No. 2:18-cv-748 at ¶ 82. Corl also allegedly told them that they had to avoid "the appearance of impropriety or the appearance of a conflict of interest." See Doc. 1 in Case No. 2:18-cv-748 at ¶ 82. Corl allegedly told them to limit their conversations and not have excessive contact at work. See Doc. 1 in Case. No. 2:18-cv-747 at ¶¶ 49, 52.

The court finds at this early stage that Corl's involvement in the May 9 meeting does not warrant her disqualification as legal counsel. Plaintiffs' allegations concerning the meeting are not presently contested. See Ohio R. Prof. Conduct 3.7(a)(1) (creating exception to disqualification where

4

lawyer's testimony "relates to an uncontested issue"). Defendants admit the truth of the allegations recited above, except they neither admit nor deny Corl's alleged statement that plaintiffs needed to limit their conversations and refrain from excessive contact at work. See Doc. 11 in Case. No. 2:18-cv-747 at ¶¶ 48-52; Doc. 14 in Case No. 2:18-cv-748 at ¶¶ 81-82. Corl represents that she described the Relationships in the Workplace Policy to plaintiffs and confirmed that it applied to them. See Doc. 10 at pp. 8-9.

Further, it is unclear how Corl's testimony would be necessary. If, as plaintiffs allege and defendants concede, Corl confirmed the applicability of the Relationships in the Workplace Policy to plaintiffs, then defendants' written Policy can speak for itself. Moreover, plaintiffs allege and defendants again admit, that Boyd had met with them one week earlier and reviewed the applicable provisions of the Policy. See Doc. 11 in Case. No. 2:18-cv-747 at ¶ 36; Doc. 14 in Case No. 2:18-cv-748 at ¶ 76. Boyd is available to testify about the Policy.

Plaintiffs argue that it is inevitable that their account of the May 9 meeting will differ from defendants' and that the jury will be called upon to determine whose account is more credible. This argument is premature. Again, defendants do not contest the account plaintiffs have thus far made of the May 9 meeting. And any variance that might develop during discovery may simply be immaterial. Rule 3.7 concerns the lawyer being a witness *at trial*. The rule does not prohibit a lawyer from serving as counsel during the pretrial period, particularly when plaintiffs here are unable to articulate any material facts concerning the May 9 meeting that are currently in dispute. See MJK Family LLC v. Corp. Eagle Mgmt. Servs., Inc., 676 F.Supp.2d 584, 600 (E.D. Mich. 2009) (denying motion to disqualify as premature because Rule 3.7 does not require the lawyer's disqualification from all phases of the litigation); Nisus Corp. v. Perma-Chink Sys., Inc., No. 3:03-CV-120, 2005 WL 6112992, at *8 (E.D. Tenn. May 27, 2005).

V.

Accordingly, plaintiffs' motion to disqualify defendants' legal counsel (Doc. 7 in Case. No. 2:18-cv-747; Doc. 10 in Case No. 2:18-cv-748) is DENIED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 27, 2019